United States District Court

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DR. HUYEN L. NGUYEN,<br><br>Plaintiff,<br><br>v.<br><br>JOHN MCHUGH, SECRETARY OF THE ARMY,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Case No.: 13-CV-01847-LHK<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT |

Plaintiff Dr. Huyen Nguyen ("Plaintiff") brings this action against Defendant John McHugh ("Defendant"), who is Secretary of the Army, alleging that Defendant discriminatorily harassed, terminated, and declined to hire Plaintiff in violation of Title VII, 42 U.S.C. § 1981, and the Due Process Clause. *See* ECF No. 1. On June 26, 2014, Defendant filed a motion for summary judgment ("Mot."). ECF No. 75. On July 16, 2014, Plaintiff filed an opposition. ECF No. 85 ("Opp'n"). On June 27, 2014, Plaintiff filed a partial motion for summary judgment as to Defendant's eighth affirmative defense. ECF No. 77. On July 16, 2014, Defendant filed an opposition. ECF No. 86. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without a hearing and hereby VACATES the hearing set for August 21, 2014. Having considered the parties' submissions and the relevant law, the Court GRANTS

Defendant's motion for summary judgment, and DENIES Plaintiff's partial motion for summary judgment.

**I. Background**

**A. Factual history**

Plaintiff is an Asian woman of Vietnamese national origin. ECF Nos. 75-2 Ex. A, 96-2 Ex. O ("Nguyen Dep.") 23:7-13. Plaintiff was formerly employed as a dentist at the Army's Presidio of Monterey Dental Clinic ("POM") in Monterey, California. ECF 85-2 ("Nguyen Decl.") ¶ 4. POM provides dental services to military personnel stationed at the Defense Language Institute in Monterey, California, and POM is staffed by a variety of active-duty military personnel, civilian employees of the Department of Defense (commonly referred to as "General Schedule" workers, hereafter "GS"), and contractors. *Id.* ¶ 6. Plaintiff worked at POM under contract with two medical staffing companies: Spectrum Health Care Resources ("Spectrum") from May 2007 until July 2009, and then Central Care, Inc. ("CCI"), from July 2009 until September 2010. Nguyen Dep. 41:15-42:6. Spectrum and CCI were under contract with the government to provide dentists, dental hygienists, and dental assistants to POM. ECF No. 77-2 at 10-11 ("Ex. 261"[1]). Plaintiff and other personnel working under the Spectrum and CCI contracts were generally referred to as "Contract Service Providers" ("CSPs"). Nguyen Decl. ¶ 5. From August 2008 through the end of Plaintiff's employment in 2010, the Officer in Charge ("OIC") of POM was an Army dentist, Colonel Kenneth Klier ("Col. Klier"). Nguyen Decl. ¶ 11; ECF Nos. 75-3 Ex. C, 85-1 Ex. A, 96-2 Ex. Q ("Klier Dep.") 39:10-13. Plaintiff asserts that Col. Klier and others harassed and discriminated against Plaintiff on the basis of her race, gender, and national origin, and claims that Col. Klier and others retaliated against her for filing complaints regarding her treatment. ECF No. 1 (Complaint).

*1. Alleged Harassment*

Plaintiff alleges that a "[p]attern of harassment, discrimination and retaliation" began "shortly after [Col. Klier's] arrival" at POM in August 2008. Opp'n at 5:10-6:1; Nguyen Decl.

[1] The exhibit numbers listed in this Order reference the exhibits as they have been numbered by the parties.

2

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

United States District Court

¶ 16. Plaintiff relies on a variety of workplace disputes and incidents to support her claim. The Court sets forth each incident below.

*The Accelerated Program Incident:* Shortly after his arrival in August 2008, Col. Klier instituted a trial "Accelerated Program" under which "one or more patients would be seated in treatment rooms and the dentist, dental hygienists, and dental assistants would move from patient to patient and back again." Nguyen Decl. ¶ 18. At a meeting about the change, Plaintiff expressed confusion about how the proposed program would work and Col. Klier responded that he would personally act as the doctor for the program's initial implementation. *Id.* The first day of the program's implementation was scheduled for a Monday in October 2008. *Id.* However, Col. Klier was actually scheduled to take that day off, and Plaintiff discovered that she had been assigned as the first dentist implementing the program instead. Klier Dep. 88:14-16; Nguyen Decl. ¶ 19. Plaintiff sent an email to her supervisor at Spectrum, expressing concern about being scheduled to implement the Accelerated Program without further training, and expressed those concerns to Staff Sergeant Claude Cretchain, the Noncommissioned Officer in Charge of POM. ECF 85-2 at 73. Staff Sergeant Cretchain notified Col. Klier, and Col. Klier changed his leave plans so that he could work the first day of the Accelerated Program as originally planned. Nguyen Decl. ¶ 19; Klier Dep. 88:6-16. Plaintiff alleges that Col. Klier scheduled Plaintiff for the Accelerated Program in an effort to put Plaintiff in a position where she would be "set up to fail," and claims that Col. Klier changed his plans only because Plaintiff complained to her management at Spectrum. Nguyen Decl. ¶ 19; Opp'n at 6:6. Col. Klier asserts Plaintiff was scheduled for the first day only as the result of a miscommunication between him and the staff member responsible for scheduling appointments at POM. Klier Dep. 88:22-89:7.

*The Scheduling Incident:* Plaintiff alleges that in June 2009, Col. Klier "warned and criticized Plaintiff" for scheduling appointments herself in violation of the clinic's policy requiring that all appointments be made through the front desk. Opp'n at 7:11-13; Nguyen Decl. ¶ 22. Plaintiff alleges that she was criticized for violating this policy while male dentists were not, pointing specifically to an incident in July involving Dr. Andre Wong, the other dentist employed

United States District Court

as a CSP at POM. Nguyen Decl. ¶ 22. Dr. Wong testified that all of the dentists and assistants at POM were admonished not to schedule appointments themselves. ECF Nos. 75-3 Ex. D, 85-1 Ex. C, 96-3 Ex. S ("Wong Dep.") 67:1-7.

*The Supply Incident:* In October 2009, Plaintiff reported to Col. Klier that medical supplies in her office were expired, and alleges that Col. Klier "became angry and hostile and began to blame [Plaintiff] for the problem." Opp'n at 7:21-22; Nguyen Decl. ¶ 23.

*The Sealant Incident:* The next incident to which Plaintiff points as evidence of harassment and discrimination is a meeting held by Col. Klier in November, 2009. Nguyen Decl. ¶ 24. Plaintiff alleges that the purpose of the meeting was "ridiculing" Plaintiff. *Id.* At the meeting, which included all of the dentists at POM, Col. Klier said that a particular procedure involving the use of a dental sealant was being performed too often, and showed a chart which displayed the use of sealants by each dentist at POM. *Id.* Plaintiff had performed substantially more sealant procedures than any other dentist. ECF 85-2 at 90. Plaintiff sent a letter to Col. Klier shortly after the meeting, pointing to a particular academic study which she argues justified her increased use of sealants. *Id.* at 89. Plaintiff argues that Col. Klier "went out of his way to make an example" of Plaintiff, based on her "gender, race, and national origin." Nguyen Decl. ¶ 24.

*December 8 Incident:* On December 8, 2009, Plaintiff left early for her lunch hour, which normally began at 11:10 AM. *Id.* ¶ 26. Plaintiff asserts that the meeting which usually took place on that day between 10:40 and 11:10 did not occur, and that she left for lunch no more than 10 minutes early, at 11:00. *Id*. Later that day, Col. Klier prepared a "Memorandum for Record" ("MFR") documenting the absence. ECF 88-4 at 52 ("Ex. 41"). In the MFR, Col. Klier states that the 10:40 meeting actually did occur, that Plaintiff had told another staff member "I don't need [Col Klier's] permission to leave," and that Col. Klier "personally observed" Plaintiff leaving the clinic at the start of the meeting. *Id.* The MFR was sent to CCI, stating that Col. Klier intended to record "30 minutes of leave time against [Plaintiff's] timesheet." *Id.* The MFR also requested that CCI "counsel" Plaintiff for her actions. *Id.* On December 15, Plaintiff submitted her time card for the pay period covering December 8. Nguyen Decl. ¶ 33. Col. Klier insisted that Plaintiff record 30

4

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

minutes of leave time instead of the 10 minutes which Plaintiff asserts is accurate. *Id.*[2] Plaintiff and Col. Klier had a meeting to discuss the issue, at which Col. Klier and Plaintiff each brought in several other staff members to report on what they had seen. *Id.* ¶¶ 34-35. Col. Klier accused Plaintiff of lying, and refused to sign any time card which did not record Plaintiff as having left 30 minutes early. *Id.* ¶ 35. Plaintiff felt "threatened and intimidated" as a result of the meeting. *Id.* ¶ 36.

*Major Wayt Incidents:* Plaintiff also points to two incidents involving one of the other dentists at the clinic, Major Lewis Wayt. Sometime around December 10, Plaintiff answered a patient's question regarding Army dental policies, and Major Wayt, working nearby, contradicted Plaintiff in a way that Plaintiff alleges was "rude and disrespectful." *Id.* ¶ 29. Plaintiff reported the incident to Col. Klier, who responded that he had no issue with Major Wayt's behavior. *Id.* Major Wayt later apologized to Plaintiff. *Id.* At some later date, Major Wayt allegedly told Plaintiff that she "must be very tough on men" because she was a "single woman" and lived "alone in a big house in Pebble Beach with two dogs." Nguyen Dep. 114:16-25. Plaintiff did not report the incident to anyone at that time. *Id.* at 115:10-12.

*2. Plaintiff's Complaints to Col. Klier and Others*

Plaintiff alleges that Col. Klier and others took adverse actions against Plaintiff for filing complaints about working conditions at POM. Opp'n at 34:11-37:18. First, Plaintiff points to complaints filed directly with management at POM. At several times throughout Plaintiff's employment, Plaintiff registered complaints directly with Col. Klier. These included letters, emails, and conversations regarding, *inter alia*, the "Scheduling Incident," the "Sealant Incident," and the first incident involving Major Wayt. Nguyen Decl. ¶¶ 29, 36. Plaintiff also discussed the treatment of women in the military with Colonel Naomi Horowitz, the second-in-command at POM. *Id.* ¶ 10.

---

[2] Plaintiff notes in her declaration that because time is recorded in 15 minute increments, she should only have lost a 15 minute increment on her timesheet. Nguyen Decl. ¶ 33.

United States District Court

Next, Plaintiff points to complaints filed with entities outside POM. In October, 2008, Plaintiff sent two emails to her supervisor at Spectrum regarding the "Accelerated Program" incident described above. In the first email, dated October 19, Plaintiff objects to being assigned to implement the new program without proper training. ECF 85-2 at 73. In the second, dated October 20, Plaintiff informs Spectrum that Col. Klier had taken over the Accelerated Program. *Id.* at 75.

Plaintiff also sent a number of letters and emails regarding the "December 8" incident described above. Nguyen Decl. ¶¶ 28, 31-32. The day after Col. Klier sent an MFR documenting the incident, CCI contacted Plaintiff. *Id.* ¶ 27. Shortly thereafter, Plaintiff made a telephone call to the Army Equal Employment Opportunity (EEO) office at POM, but Plaintiff was told that because she was a CSP she would have to go to her staffing company, in this case CCI. *Id.* ¶ 30. Afterwards, Plaintiff sent a number of letters to CCI in which she stated her version of the events. *Id.* ¶ 28. The second of these letters claims Col. Klier filed the MFR as "indirect retaliation" for an incident in November 2009 where Plaintiff had "asked [Col. Klier] to leave when he was acting inappropriately in front of the patient." ECF 85-2 at 96-98 (describing incident during which Col. Klier had an argument with a staff member in the presence of one of Dr. Nguyen's patients). The letter also recounts the October 2009 "Supply Incident" and the December 2009 incident in which she alleges that Major Wayt contradicted her in front of a patient. *Id.* The letter to CCI states there is a "distinct feeling of partiality for the military personnel and a condescending and hostile treatment toward the civilian personnel" at POM. *Id.*

Following the December 15 meeting at which Col. Klier insisted that Plaintiff take 30 minutes off her time card, Plaintiff sent another letter to her point of contact at CCI. *Id.* at 102-103. The letter described the meeting between Plaintiff and Col. Klier, and states that Plaintiff felt "threatened and intimidated." *Id.* She alleges that "there was a selective process in disciplining my case," and alludes to a "code of conduct between military and contracting personnel." *Id.*

In January 2010, in response to Plaintiff's complaints, CCI moved up a planned visit to POM by CCI's management, and conducted interviews with CCI employees regarding the work environment at POM. Nguyen Decl. ¶ 38. On February 25, 2010, Plaintiff sent an email to CCI in

6

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

which she states that there had been no further "intimidating incidents" and that POM has been an "acceptable working environment" since the December incident. ECF 85-2 at 108. Plaintiff asked CCI what the status of her complaint was, and CCI responded by forwarding a short letter which "found no basis to [Plaintiff's] claim of hostile work environment" and recommended that Plaintiff "continue to work as the professional that you have been and continue following the direction/guidance provided to you by all military personnel regarding patients and work assignments." *Id.* at 109.

*3. End of Plaintiff's employment*

In February 2010, the U.S. Army Dental Command ("DENCOM") announced to local commanders like Col. Klier that "insourcing" would take place at selected Army dental facilities. ECF 88-5 at 42-45 ("Ex. 120"). The term "insourcing" was used by the Department of Defense to describe the process of eliminating positions currently filled by private contractors and replacing them with internal GS positions filled by federal civilian employees. ECF Nos. 75-4 Ex. I, 88-1 Ex. E, 96-3 Ex. T ("Heath Dep.") 39:22-40:3; ECF 88-7 at 32 ("Ex. 240") (email explaining insourcing). The DENCOM insourcing was part of a Department of Defense-wide response to concerns that "there were functions that had been handed off to contractors that really belonged in the government or could be performed in a more cost effective manner inside the government." Heath Dep. 107:25-108:4. In 2010, the broader insourcing effort had been going on for some time, and some defense contractors had expressed concern that the DOD was "poaching" their employees. *Id.* at 201:4-18. As a result, commanders were explicitly forbidden from directly soliciting incumbent CSPs for the newly created positions. Ex. 120; Heath Dep. 142:1-19. However, commanders were authorized to make a "generalized announcement" regarding the possibility that positions would become available. Ex. 120.

At a staff-wide meeting in March 2010, Col. Klier announced that DENCOM was planning on replacing a number of contract positions "worldwide," but did not mention POM specifically. Nguyen Decl. ¶ 39. Plaintiff described the meeting in an email sent to CCI shortly afterwards, stating that Col. Klier "advised all contractors that the military is looking into replacing contractors

United States District Court

with G.S. employees. It might be effective at the beginning of the fiscal year." ECF 75-5 at 60 ("Ex. 50"); Nguyen Dep. 231:24-232:1. Over the next week, Col. Klier sent two emails to the CSP workers at POM. The first email, sent on March 3, provided substantially the same information disseminated in the previous day's meeting. ECF 75-5 at 36 ("Ex. 23"); Nguyen Dep. 265:5-7. This email did not specify whether positions would be available at POM, but stated that applications for any personnel interested in any position would need to be submitted by April 16. Ex. 23. Col. Klier emphasized that a "proactive approach is suggested[.]" *Id*. Plaintiff admits that she saw an announcement poster from DENCOM posted on a bulletin board inside POM that included this information. Nguyen Dep. 157:7-9; ECF75-5 at 32 ("Ex. 21"); Opp'n at 13. At that time, the announcement was generic in that it did not contain any information specific to POM or say at which DENCOM facilities GS positions would become available. Ex. 21.

On Friday, March 5, Col. Klier's immediate superior contacted Col. Klier and informed him that contracting companies had begun to ask questions about the insourcing process at POM. ECF 75-5 at 65-66 ("Ex. 124"); Klier Dep. 198:16-21. As a result of that call, Col. Klier sent another email to the CSPs at POM. ECF 75-5 at 38 ("Ex. 24"). The stated purpose of the email was to "reemphasize" that Col. Klier had not "at anytime sa[id] that any GS openings were occurring at POM." Ex. 24. Col. Klier's email directed recipients to a website with general information about the availability of GS positions, and described the general process for applying. *Id*. At that time, the website largely mirrored the generic announcement poster, in that it did not specify whether jobs would be available at POM or not. Nguyen Decl. ¶ 40.

Col. Klier testified that a revised announcement poster was posted on the bulletin board at POM on April 2. Klier Dep. 201:2-9; ECF 75-5 at 34 ("Ex. 22"). This poster was almost identical to the one posted in March, except that the revised poster explicitly stated that positions would be available at POM. *See* Ex. 21, Ex. 22. Plaintiff did not notice this changed poster in April, but admits that the POM-specific announcement was on the bulletin board when she checked the bulletin in board in August. Nguyen Dep. 157:21-25; 158:1-3. Similarly, the website to which Col. Klier had previously directed Plaintiff began showing that jobs would be available at POM

8

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

specifically in early April of 2010. ECF 75-4 at 93. Plaintiff admits she stopped checking the website in early March. Nguyen Decl. ¶ 40.

There is considerable dispute between the parties whether or not there was further communication to POM staff regarding plans to insource. Defendant asserts that on April 2, Col. Klier also held a meeting with all CSPs at which he announced that GS positions would be available at POM specifically. Klier Dep. 201:2-9. Dr. Andre Wong and another POM staff member confirmed that an April 2 meeting occurred. Wong Dep. 114:3-24; ECF No. 75-3 Ex. F ("Balestri Dep.") 48:2-7. However, Plaintiff and two other CSPs who were not hired during the insourcing process assert that no meeting occurred on April 2. Nguyen Decl. ¶ 43; ECF No. 85-4 ("Hulsman Decl.") ¶ 18; ECF No. 85-5 ("Colton Decl.") ¶ 17. Summary judgment requires viewing all evidence in the light most favorable to the nonmoving party, so for the purposes of resolving this motion the Court disregards the April 2 meeting as if it never occurred.

In July 2010, DENCOM gave final approval for insourcing to occur at a number of locations around the world, including POM. Heath Dep. 167:6-168:21; ECF 88-8 at 70-74 ("Ex. 127"). As a result, all of the CSP positions at POM were eliminated, and POM would hire candidates for equivalent GS positions on a one-for-one basis. Ex. 127. Plaintiff had no special entitlement to a GS position at POM. Heath Dep. 159:21-160:9 ("[W]e were insourcing positions, not people; and so it was the position that was converted to federal civil service. ... the sites were not obligated to select from the contractors."). It is undisputed that Plaintiff did not submit an application for a position as a GS dentist prior to the April 16 deadline. Nguyen Decl. ¶ 40. Between 20 and 30 people did apply and Col. Klier recommended two applicants for the converted positions: Dr. Andre Wong and Dr. Russell Catterlin. ECF No. 75-6 ("Klier Decl.") ¶ 7. Dr. Wong, an Asian-American male, is a former Army Major and was employed alongside Plaintiff as a CSP prior to the insourcing. Wong Dep. 12:17-22; 60:8-13. Dr. Catterlin, a Caucasian male, is a retired Army Colonel and was Col. Klier's predecessor as OIC of POM. ECF Nos. 75-2 Ex. B, 85-1 Ex. B, 96-2 Ex. P ("Catterlin Dep.") 35:16-14. Final selections were made by DENCOM sometime in August. ECF 88-5 at 84 ("Ex. 131"); Klier Dep. 207:18-25 (explaining that DENCOM had final

United States District Court

hiring authority, but Col. Klier's recommendations were influential). Dr. Wong and Dr. Catterlin were notified of their selection in August, and formal offer letters were sent in September. ECF 75-5 at 60 ("Ex. 95"); ECF 88-6 at 51, 53 ("Ex. 161" and "Ex. 162").

On August 25, Plaintiff was informed by CCI that her position had been converted into a GS position and that her contract with CCI would terminate on October 1. Nguyen Decl. ¶ 50. Plaintiff emailed Col. Klier, advising him that she wished to apply for the GS position. ECF 75-5 at 40 ("Ex. 24"). Col. Klier responded that the "selections for the GS positions were made many months ago, soon after the application period ended. You did not submit an application, therefore you were never under consideration for a GS position." *Id.* Plaintiff alleges that had she applied "she would have been selected for the position because she had already held the job as a CSP." ECF No. 1 ¶ 27. Plaintiff's contract with CCI was terminated, and her employment at POM ceased on September 30, 2010.

**B. EEOC Complaint**

Shortly after being informed that her CSP position would be eliminated and that she would not be allowed to apply for the converted GS position, Plaintiff attempted to contact a number of government officials and agencies, including Col. Klier's commanding officer, the Office of Special Counsel, and an office of the Equal Employment Opportunity Commission ("EEOC") in San Jose. Nguyen Decl. ¶ 53. Ultimately, in September, Plaintiff submitted a formal written complaint to the Army EEO office at the Presidio of Monterey. *Id.* ¶ 54. The Army EEO initially refused to process the complaint, citing Plaintiff's status as a CSP. ECF 88-4 at 7 ("Ex. 8"). That decision was reversed by the EEOC in July 2011, ECF 88-4 at 17, and the Department of Defense conducted a fact-finding conference in October 2011. *See* ECF 88-8. A final decision regarding Plaintiff's complaint was rendered by the EEOC in January 2013. Nguyen Decl. ¶ 54.[3]

Following that ruling, Plaintiff filed the instant action. Plaintiff asserts the following causes of action in her Complaint: (1) discrimination in employment on the basis of gender, race, and

[3] The EEOC decision is not in the record.

10

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

national origin; (2) discrimination in application for employment on the basis of gender, race, and national origin; (3) retaliation in employment and application for employment on the basis of gender, race, and national origin; (4) harassment on the basis of gender, race, and national origin; (5) violation of the Civil Rights Act, 42 U.S.C. § 1981, for discrimination in the making and enforcement of contracts on the basis of race; and (6) violation of Plaintiff's "right to substantive and procedural due process." ECF No. 1 ¶¶ 29-52.

**II. Evidentiary Objections**

Defendant has raised a number of objections relating to evidence and filings submitted by Plaintiff. A brief account of the relevant procedural history follows.

Defendant filed a motion for summary judgment on June 26, 2014. ECF No. 75. In accordance with this district's local rules, Plaintiff's opposition brief was due on July 10, 2014. In response to a request by Plaintiff's counsel to accommodate conflicts with other cases, Defendant's counsel stipulated to a changed due date of July 16 for opposition briefs, and July 23 for reply briefs. ECF No. 80. The Court granted the parties' motion to change the briefing schedule and move the hearing date. ECF No. 81. Plaintiff's opposition brief was filed on July 16. ECF No. 85. The Court noted that Plaintiff's electronic filing was missing several exhibits, and ordered Plaintiff to file the missing exhibits by the following Monday, July 21. ECF No. 87. Plaintiff filed the missing exhibits on Sunday, July 20. ECF No. 88.

On Tuesday, July 22, just one day before the due date for Defendant's reply brief, Plaintiff filed an "Errata" to her opposition brief. ECF No. 93 ("Errata"). Plaintiff's Errata is essentially a resubmission of Plaintiff's opposition brief in its entirety, with the addition of some citations to the record, correction of some typographical errors, and the addition of a Table of Contents and Table of Authorities. Plaintiff's counsel filed a declaration stating that commitments in other cases had prevented her from preparing an initial brief with the appropriate tables and citations. ECF No. 94. Defendant filed a reply brief on time on July 23. ECF No. 96 ("Reply"). On July 26, 3 days after the due date for reply briefs, Plaintiff filed a motion for extension of time to file the declaration of Sandra Calderon, one of Plaintiff's former co-workers at POM. ECF No. 100. Plaintiff asserted that

United States District Court

the Calderon declaration was omitted from the Errata filing due to a technical error. *Id.* Plaintiff relies on the Calderon declaration primarily as evidence of statements about insourcing allegedly made by Col. Klier at the December 8, 2010 meeting. *Id*. at 3:5-13.

Defendant has filed a number of evidentiary and procedural objections to Plaintiff's opposition brief and late filings. First, Defendant moves to strike Plaintiff's Errata on the basis of its untimely filing, arguing that Defendant did not have adequate time to respond to the Errata prior to the due date for reply briefs. ECF No. 95. Plaintiff filed an opposition to Defendant's motion to strike. ECF No. 99. Second, Defendant opposes Plaintiff's motion to extend time to file the Calderon declaration, arguing that Plaintiff had not identified Ms. Calderon as a potential witness in a timely manner. ECF No. 101. Third, Defendant argues that because Plaintiff's timely-filed opposition brief fails to cite to any evidence in accordance with Rule 56, the Court should conclude on that basis that Plaintiff has failed to raise a dispute as to any material fact. Reply at 3:21. Finally, Defendant raises a number of evidentiary and procedural objections to Plaintiff's opposition brief, arguing that the brief relies on hearsay, unauthenticated exhibits, and misleading or unsupported assertions of fact. Reply at 12:19-14:28.

As initially filed, Plaintiff's opposition brief was 37-pages, which is 12 pages in excess of the 25 pages allowed by this district's local rules. *See* ECF No. 85; N.D. Cal. Civil Local Rule 7-3. Despite its length, Plaintiff's opposition to Defendant's motion for summary judgment does not contain a single citation to the record, and relies solely on bare factual assertions and conclusory argument. Even where the Plaintiff refers to the testimony of specific witnesses or exhibits, there is no accompanying citation to specific lines, pages, or documents. *See, e.g.*, Opp'n at 35:3-4 (stating "Col. Klier testified that none of the EEO policies applicable in the clinic workplace covered CSP workers" without pointing to specific parts of Col. Klier's testimony).

Not including the added Table of Contents or Table of Authorities, Plaintiff's Errata brief is 40 pages long, which is 15 pages in excess of the 25 pages allowed by this district's local rules. Plaintiff's Errata brief attempts to correct the lack of citations in Plaintiff's opposition brief, but the citations provided in the Errata are incomplete at best. For example, many paragraphs are

12

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

supported only by one cursory citation at the end of the paragraph. *See, e.g.*, Errata at 4:15-20; *id.* at 16:19-17:2. Many factual assertions remain completely unsupported. Additionally, Plaintiff occasionally refers to the testimony of witnesses without providing any corresponding deposition or declaration. *See, e.g.*, Errata at 4:25 n. 6 (discussing the testimony of a Colonel Bruce without attaching a deposition from that witness); *id.* at 15:19-20 (discussing the testimony of Claude Cretchain without attaching a deposition from that witness). Indeed, in at least one instance, Plaintiff characterizes a witness' testimony in a way that is flatly contradicted by the relevant portion of that witness' deposition in the record. *See id.* at 15:19-20 ("every Army witness, including Wong. . . denied that there was a [meeting on April 2]"); *cf.* Wong Dep. 114:3-24 (confirming that a meeting occurred on April 2).[4]

Because Plaintiff made her Errata filing without the permission of the Court, because it continues to violate the local rules, and because it would prejudice Defendant if Defendant was forced to respond in reply to a lengthy and untimely filing one day before the deadline for the reply, the Court GRANTS Defendant's motion to strike Plaintiff's Errata, ECF No. 95. To the extent Plaintiff raises any new legal or factual theories in her Errata, those claims are waived and the evidence is stricken from the record. Similarly, because of the untimeliness of the Calderon declaration, and the potential of prejudice to Defendant, the Court DENIES Plaintiff's motion for extension of time to file the Calderon declaration, which is stricken from the record. As discussed below however, even without referring to the citations in Plaintiff's Errata, this Court has credited specific factual assertions in Plaintiff's original opposition brief where corresponding evidence could be located in the record. Nonetheless, even if the Court were to consider Plaintiff's Errata, the Court's ruling on the cross-summary judgment motions would not change.

Next, the Court addresses Defendant's argument that because Plaintiff's initial opposition is not supported by citations to any record evidence, Plaintiff has failed to identify any dispute of material fact. Reply at 3:4-5. Federal Rule 56(c) provides that for purposes of summary judgment,

[4] This mischaracterization of the record is also in Plaintiff's original opposition brief. Opp'n at 14:26-27.

13

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

a "party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). It is not the task of the Court "to scour the record in search of a genuine issue of triable fact" for the non-moving party. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)); *see also Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988) (finding that the court need not search through a voluminous record to locate and identify facts assisting the non-moving party to avoid summary judgment.). Here, because Plaintiff fails to cite to *any* particular part of the record, Defendant is correct that the Court is not obligated to consider the factual assertions in Plaintiff's opposition brief. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 775 (9th Cir. 2002) ("[W]hen a party relies on deposition testimony in a summary judgment motion without citing to page and line numbers, the trial court may in its discretion exclude the evidence."). On that basis alone, the Court could find that Plaintiff has not demonstrated the existence of any genuine disputes of material fact. Nonetheless, this Court declines to exercise its discretion in that way and rejects Defendant's invitation to find no genuine issue of fact on that basis. Rather, where the Plaintiff's timely opposition referred to specific facts, witness testimony, or exhibits that the Court could locate in the record, the Court considered that evidence in determining whether a genuine dispute of fact exists in this case. However, bare factual assertions and conclusory statements unsupported by specific evidence have not been given any weight. *See, e.g.*, Opp'n at 6:17-18 (alleging without citation or specific reference that "[Col. Klier] imposed criticism and warnings on [Plaintiff] under circumstances under which other dentists (male dentists) were not similarly disciplined.").

The Court does not reach the remainder of Defendant's evidentiary objections. As discussed below, even considering the evidence to which Defendant objects, Plaintiff has not demonstrated the existence of a dispute of material fact sufficient to escape summary judgment on Plaintiff's claims. Thus, the Court need not rule on Defendant's specific evidentiary objections.

Finally, the Court notes that while it does not reach Plaintiff's motion for summary judgment, *see supra* Section IV, the Court is obligated to consider the evidence provided in support

14

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

of that motion before ruling on Defendant's cross motion for summary judgment. *See Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (holding that district court must "review the evidence submitted by Plaintiffs in support of their motion for summary judgment, and specifically identified in their moving papers, before ruling on Defendants' motions"). Plaintiff's motion for summary judgment purports to rely largely on the "[c]omplaint in this action and the Declaration of [Plaintiff]" without citing to any particular portion of either. ECF No. 77 at 2 n. 3. Plaintiff may not rely on her complaint as evidence at summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). However, where Plaintiff's motion for summary judgment does cite to specific portions of the record other than her complaint, the Court has considered those facts.

**III. Legal Standard**

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322. A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," the court may grant summary judgment. *Id.* at 249–50 (citation omitted). At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." *House v. Bell*, 547 U.S. 518, 559–60 (2006).

The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Celotex*, 477 U.S. at 323. To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted). Once the moving party has satisfied its initial burden of

15

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

production, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. *Id.* at 1103.

**IV. Discussion**

Before the Court is the Defendant's motion for summary judgment and Plaintiff's motion for partial summary judgment. Defendant argues that Plaintiff has not produced evidence demonstrating a *prima facie* case of discrimination or retaliation under Title VII and, in any event, fails to raise a genuine dispute of material fact as to whether Defendant's proffered non-discriminatory reasons for actions with respect to Plaintiff's employment were pre-textual. Defendant argues that Plaintiff's remaining constitutional claims are barred by Title VII, and that Plaintiff has not established a property interest supporting a claim for violation of Due Process under the Fifth Amendment. Finally, Defendant argues that Plaintiff is not entitled to compensatory or punitive damages.

Plaintiff's opposition to Defendant's motion argues that as a result of some combination of Plaintiff's gender, race, and a desire to retaliate against Plaintiff for engaging in protected activity, Defendant terminated Plaintiff, refused to provide Plaintiff with information regarding the availability of a GS position at POM, and took a variety of other adverse actions against Plaintiff. Plaintiff further argues that the evidence demonstrates Plaintiff was subjected to a hostile work environment. Plaintiff argues that the proffered reasons for Defendant's actions are pre-textual. Finally, Plaintiff argues that various regulations were not followed as part of the hiring process, and that Plaintiff's right to due process was violated by the failure to follow regulations.

As explained below, the Court agrees with Defendant. For each of Plaintiff's claims, Defendant has met its initial burden to show that Plaintiff lacks sufficient evidence to carry its ultimate burden of persuasion at trial. With respect to Plaintiff's Title VII discrimination and retaliation claims (First, Second, and Third Causes of Action), Plaintiff fails to establish a *prima facie* case of retaliation, and while she is able to establish a *prima facie* case of discrimination, she fails to raise a genuine material dispute of fact as to whether Defendant's proffered non-discriminatory reasons for allegedly adverse actions were pre-textual. Similarly, with respect to

United States District Court

Plaintiff's Title VII harassment claim (Fourth Cause of Action), Plaintiff fails to show that she was subject to a hostile work environment. Furthermore, the Court finds *sua sponte* that as a result of sovereign immunity, the Court lacks subjects matter jurisdiction over Plaintiff's claims under 42 U.S.C. § 1981 (Fifth Cause of Action). Finally, Plaintiff's Due Process claim (Sixth Cause of Action) fails because Plaintiff has not demonstrated that she has a property interest in her right to employment at POM or pointed to a particular regulation that Defendant failed to follow. Because all of Plaintiff's claims fail, the Court need not reach Defendant's arguments regarding the availability of punitive or compensatory damages. Mot. at 13 n. 7. Accordingly, Defendant's motion for summary judgment is GRANTED.

Finally, Defendant's eighth affirmative defense asserts that "Plaintiff was not an employee [of the Army] within the meaning of Title VII." ECF No. 7 at 7:27. Plaintiff's partial motion for summary judgment argues that Plaintiff is an employee of the Army as a matter of law. ECF No. 77. Because Plaintiff's claims all fail as described below even assuming Plaintiff is the Army's employee,[5] the Court does not reach and thus DENIES as moot Plaintiff's motion for summary judgment.

**A. Title VII Discrimination Claim**

Under Title VII, it is "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…" 42 U.S.C. § 2000e–2(a). "A person suffers disparate treatment in his employment when he or she is singled out and treated less favorably than others similarly situated on account of [protected status]." *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (internal quotation marks omitted).

[5] The Court assumes for purposes of addressing Defendant's motion for summary judgment that Plaintiff is an employee of the Army.

17

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

Title VII claims follow the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case. *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003). To establish a prima facie case, Plaintiff must produce evidence which "give[s] rise to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1148 (9th Cir. 1997) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for allegedly unlawful conduct. *Id.* If Defendant articulates a legitimate reason, the burden shifts back to Plaintiff to demonstrate that the employer's stated reason is a pretext for unlawful discrimination. *Id.* The Court will first consider whether Plaintiff has produced evidence sufficient for a reasonable fact finder to conclude that Plaintiff has demonstrated a *prima facie* case of discrimination.

*1. Prima Facie Case*

"[T]he prima facie case operates as a flexible evidentiary standard," one that varies with the allegations and facts of a particular situation. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). "The *prima facie* case may be based either on a presumption arising from the factors such as those set forth in *McDonnell Douglas Corp. v. Green* or by more direct evidence of discriminatory intent." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (internal citation omitted).

Here, Plaintiff brings a claim for discrimination *during* employment and a claim for discrimination in *applying* for employment. Plaintiff argues she has established a *prima facie* case for both claims through (a) "direct evidence" of discriminatory intent, and (b) by establishing a "presumption" of unlawful discrimination based on the *McDonnell Douglas* factors. Below, the Court will first discuss whether Plaintiff has adduced "direct evidence" of discriminatory intent for both Plaintiff's discrimination claims. Finding none, the Court will then discuss whether Plaintiff has established a presumption of discrimination based on the *McDonnell Douglas* factors for each discrimination claim separately.

18

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

*a. Direct evidence of unlawful intent*

The Court first addresses here only whether, as Plaintiff argues, Plaintiff has adduced "direct evidence" of discriminatory intent for her discrimination claims. Opp'n at 21:28. Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Vasquez*, 349 F.3d at 640 (citation omitted). Direct evidence of discriminatory intent typically takes the form of "[r]acist or sexist statements." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 662 (9th Cir. 2002); *see also Cordova v. State Farm Ins. Companies*, 124 F.3d 1145, 1149 (9th Cir. 1997) (employer referred to a Mexican-American employee as a "dumb Mexican"); *Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir. 1991) (employer stated that female candidates get "nervous" and "easily upset"). In contrast to direct statements, evidence merely showing that employees outside a protected class were treated differently is usually circumstantial, requiring inference in order to reach "the conclusion that [the employer] discriminated." *Aragon*, 292 F.3d at 663. For instance, the *Aragon* court found no direct evidence where the plaintiff did not allege "that he or his white co-workers were subjected to racial comments; rather, [the plaintiff] simply assert[ed] that three of the four individuals laid off were white." *Id*. The court observed that this argument "seems to confuse the difference between 'direct' and 'circumstantial' evidence[.]" *Id.* at 662. Unlike direct evidence, circumstantial evidence requires that a court *infer* the invidious role of race or some other protected factor in the employment decision. *Id.*

Here, to support her argument that there is "direct" evidence of discriminatory intent on the basis of gender, Plaintiff first relies on testimony from "Plaintiff and her co-workers of [Colonel] Klier's discriminatory attitude and behavior and his disparate treatment of women." Opp'n at 21:28. Presumably, Plaintiff is referring to nearly verbatim statements in declarations filed by three of Plaintiff's female coworkers which assert that "Col. Klier did not like outspoken women and in the POM clinic generally women were not treated as well as the men." Colton Decl. ¶ 5; Hulsman Decl. ¶ 8; ECF No. 85-3 ("Berg Decl.") ¶ 5. Similarly, Plaintiff argues that Colonel Klier's "hostile and abusive treatment of Plaintiff in contrast with the male dentists" provides direct evidence of

19

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

discrimination. Opp'n at 21:28; Nguyen Decl. ¶ 16 (stating that Col. Klier "did not treat the male dentists in a similarly rude and disparaging way."). Plaintiff's argument fails because accusations of disparate treatment constitute only *circumstantial* evidence, not *direct* evidence, of unlawful intent. *Aragon*, 292 F.3d at 663 (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000) (finding that evidence of disparate treatment in a small population of workers did not constitute *direct* evidence of discrimination). While circumstantial evidence can be the basis of a *prima facie* case, Plaintiff's evidence here does not amount to *direct* evidence of discriminatory intent.

Plaintiff also argues in a cursory fashion that Defendant's "admitted preference" for hiring dentists with military experience constitutes *direct* evidence of discriminatory intent "given the demographic makeup of the military officers of that rank." Opp'n at 22:2-4. Plaintiff asserts that the preference for former military dentists is merely a "code" for discrimination against women and constitutes *direct* evidence of discriminatory intent. *Id.* The Court rejects Plaintiff's argument. First, Plaintiff has not provided any evidence that Defendant's alleged preference for hiring military veterans is a "code" for discriminatory intent. Second, even assuming Defendant indeed had a preference for hiring military dentists, Plaintiff does not cite, nor has this Court found, any case holding that a preference for hiring those with military experience constitutes *direct* evidence of discriminatory intent against women or minorities.

In sum, the Court concludes that none of the evidence provided by Plaintiff provides "direct evidence" of unlawful intent. Finding no direct evidence of discriminatory intent, the Court will next consider, for each of Plaintiff's discrimination claims separately, whether Plaintiff can establish a *prima facie* case by showing a presumption of discrimination based on the *McDonnell Douglas* factors.

*b. Discrimination During Employment Claim*

In order to establish a presumption of discrimination in employment for the purposes of establishing a *prima facie* case, Plaintiff must show: (1) she is a member of a protected class; (2) she was qualified for her position and performing her job satisfactorily; (3) she experienced an

United States District Court

adverse employment action; and (4) similarly situated individuals outside of her protected class were "treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). It is undisputed that Plaintiff is a member of a protected class. Similarly, Defendant does not argue that Plaintiff was not qualified for her job as a dentist at POM. Thus, the Court focuses on the third and fourth factors, adverse employment action and the disparate treatment of similarly situated individuals. The Court concludes that while Plaintiff has shown an adverse employment action, she has not shown that similarly situated individuals outside of her protected class were treated more favorably, as explained below.

Generally, an adverse employment action is one that "materially affect[s] the compensation, terms, conditions, or privileges of ... employment." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000). While the Ninth Circuit has held that adverse employment actions must be defined "broadly," *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000), "[n]ot every employment decision amounts to an adverse employment action." *Strother v. S. California Permanente Med. Grp.*, 79 F.3d 859, 869 (9th Cir. 1996). "Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). On the other hand, "mere ostracism in the workplace is not enough to show an adverse employment decision." *Id.* (citation omitted). Here, Plaintiff alleges various adverse employment actions, and the Court addresses each in turn.

Plaintiff argues that the termination of her employment at POM constitutes an adverse employment action. Opp'n at 23:5-6. The Court agrees. While Defendant argues that Plaintiff lost her job solely as the result of the expiration of the contract between the Army and CCI, the loss of a position resulting from reorganization can still constitute an adverse employment action. *See Rajah v. Cnty. of Clark*, 313 Fed. Appx. 8, 10 (9th Cir. 2008) (unpublished) (holding that the

United States District Court

elimination of plaintiff's position in a county-wide reorganization qualifies as an adverse employment action, but finding no causal link between the reorganization and protected activity in a retaliation case).[6] Thus, the Court concludes that Plaintiff's termination is an adverse employment action for the purposes of establishing her *prima facie* discrimination case.

The remainder of Plaintiff's allegations regarding her employment do not rise to the level of adverse employment actions. Plaintiff alleges that a variety of "warnings" given by Col. Klier to the Plaintiff prior to the insourcing process constitute adverse employment actions. Opp'n at 24:8-10. Specifically, Plaintiff points to "verbal warnings" from Col. Klier regarding the making of appointments and the use of sealants, and "written warnings in the form of MFR's." *Id.* None of these actions rise to the level of an adverse employment action for the purposes of a Title VII claim. At the "sealant" meeting, Col. Klier merely displayed a chart which showed the number of sealant procedures performed by all the dentists at POM. Nguyen Dep. 57:20-23 ("[Col. Klier] didn't say anything. He just showed a graph that he had charted out on doctors, and he said that Dr. Nguyen had the most."). Col. Klier also testified that he held the meeting on the use of sealants because he was concerned about the number of sealants applied by both Plaintiff *and* Dr. Wong. Klier Dep. at 103:3-104:16; Exhibit 46 (ECF No. 75-5 at 55) (chart showing that Dr. Wong and Plaintiff had used the most sealants). At the "appointments" meeting, Plaintiff does not even allege that she was singled out for censure specifically. Nguyen Decl. ¶ 22. Adverse employment actions must "materially affect the compensation, terms, conditions, or privileges of ... employment." *Chuang*, 225 F.3d at 1126. Although Plaintiff may have felt embarrassed as a result of being "warned" about certain behaviors by Col. Klier, "neither a 'bruised ego' nor public humiliation rises to the level of an adverse employment action." *McCaw v. Potter*, 2006 WL 2520328, at *7 (D. Nev. Aug. 29, 2006) (internal citations and quotation marks omitted) (citing *Spring v. Sheboygan*

[6] Further, evidence of Defendant's *motive* in eliminating the CSP positions at POM is more appropriately considered under the "non-discriminatory explanation" prong of the *McDonnell Douglas* framework. *See Hawkins v. Home Depot USA, Inc.*, 294 F. Supp. 2d 1119, 1123 (N.D. Cal. 2003) (holding that reorganization which resulted in the elimination of plaintiff's position was legitimate, non-discriminatory reason for termination), *aff'd*, 127 Fed. Appx. 305 (9th Cir. 2005).

United States District Court

*Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989)). Employers must have the ability to address deficient performance, and Title VII does not mandate employers conduct that correction in private. Absent evidence that Plaintiff was routinely or systematically singled out for corrective action unrelated to reasonable employment concerns, there is no adverse employment action based on these incidences.

Similarly, while an "undeserved negative performance review" can constitute an adverse employment action, *Brook*s, 229 F.3d at 928, the December 8 MFR does not rise to that level. Col. Klier's MFR merely notes Plaintiff's absence, and requests that CCI counsel Plaintiff. Ex. 41. The *Brooks* court specified that only "undeserved" negative reviews are adverse for the purposes of a disparate treatment claim. 229 F.3d at 928. While the parties dispute the precise length of Plaintiff's absence on December 8, it is undisputed that Plaintiff left early. Nguyen Decl. ¶ 26. Plaintiff testified that she only missed 10 to 15 minutes of work. Nguyen Dep. at 99-100. Defendant contends she missed 30 minutes of work. ECF 88-4 at 52 ("Ex. 41"); Nguyen Decl. ¶ 33. A quibble over a 10-minute absence versus a 30-minute absence does not rise to the level of an adverse employment action, even if the difference resulted in a loss of pay for that disputed absence period.[7] *See Molina v. Los Angeles Cnty., Dep't of Mental Health*, 58 Fed. Appx. 311, 315 (9th Cir. 2003) (unpublished) (holding that "loss of an hour's pay" was not an adverse employment action for purposes of retaliation or hostile work environment claim).

Finally, Plaintiff alleges that the failure of Defendant to investigate any of her complaints is an adverse employment action. Opp'n at 24:8-12. First, the Court notes that Plaintiff's Complaint does not even allege failure to investigate as a basis for discrimination in her employment. *See* ECF No. 1 ¶ 31. Second, an adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus.*,

[7] Plaintiff's contrary reliance on *Coleman v. ARC Auto., Inc.*, 255 Fed. Appx. 948 (6th Cir. 2007) (unpublished), is misplaced. In addition to being an unpublished out-of-circuit opinion, the *Coleman* court held that the plaintiff was *not* subject to an adverse employment action.

23

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

*Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Without more, merely failing to investigate workplace complaints does not rise to the level of an adverse employment action. *See McEnroe v. Microsoft Corp.*, 2010 WL 4806864, at *5 (E.D. Wash. Nov. 18, 2010) ("A 'failure to investigate' is not an adverse employment action for purposes of a discrimination claim."); *Collins v. Potter*, 2010 WL 5376221, at *6 (S.D. Cal. Dec. 22, 2010) (finding that failure to investigate a complaint of vandalism is not an adverse employment action).[8]

In sum, only the termination of Plaintiff's employment constitutes an adverse employment action. However, in order to complete her *prima facie* showing, Plaintiff must also demonstrate that similarly situated individuals outside of her protected class were "treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson*, 358 F.3d at 603. In order to be similarly situated, employees must "have similar jobs and display similar conduct." *Vasquez*, 349 F.3d at 641. As a result, comparisons between Plaintiff and non-CSP employees (i.e. military and GS personnel) are not necessarily relevant to the disparate treatment analysis. For instance, different rules govern the payment of military officers, GS employees, and contractors, and so a military or GS dentist would be allowed to leave early in a situation where a CSP would not. *See* Catterlin Dep. 83:23-85:22. Similarly, CSP employees and GS employees at POM are required to follow different procedures in order to file a workplace complaint. *Id.* at 54:2-55:17 ("Q: In the event of a problem or complaint that a worker might have, whether they are a government service worker or a contract service provider,

---

[8] As stated above, for purposes of this summary judgment motion, the Court assumes that Plaintiff is an employee of the Army. Nonetheless, the Court merely notes that when Plaintiff brought forth her complaints to the Army EEO, the Army referred Plaintiff's complaints to CCI, who then investigated Plaintiff's complaints by conducting interviews with CCI employees regarding the work environment at POM. Nguyen Decl. ¶ 38. On February 25, 2010, Plaintiff sent an email to CCI in which she asked about the status of her complaints but stated that there had been no further "intimidating incidents" and that POM has been an "acceptable working environment" since the December incident. ECF 85-2 at 108. CCI forwarded Plaintiff a short letter stating CCI had investigated but had "found no basis to [Plaintiff's] claim of hostile work environment" and recommended that Plaintiff "continue to work as the professional that you have been and continue following the direction/guidance provided to you by all military personnel regarding patients and work assignments." *Id.* at 109.

24

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

how can that worker bring their problem or concern or complaint to the attention of the Army? A. Well, I mean, it would be different. It would depend on the type of worker that it is."). Thus, non-CSP dentists were not similarly situated to Plaintiff.

With respect to Plaintiff's termination, Plaintiff points to no evidence showing that any "similarly situated" employees were treated more favorably. When the Army terminated the contract with CCI, *all* of the CSP employees at POM lost their positions. Klier Decl. ¶ 6. There is no evidence that any CSP outside of Plaintiff's protected class retained their position *as a CSP* at POM. Thus, even though some CSPs subsequently obtained substantially similar positions as GS employees,[9] Plaintiff cannot establish a *prima facie* case for disparate treatment with respect to the termination of her position at POM. Accordingly, the termination of CCI's contract with the government and the subsequent loss of Plaintiff's employment through CCI does not establish a *prima facie* case of discrimination.

Similarly, even assuming the workplace incidents and "warnings" discussed above could be construed as adverse employment actions, Plaintiff has not shown that other similarly situated individuals were treated any differently. For instance, Dr. Wong testified that Col. Klier admonished all of the doctors at POM about proper scheduling procedures, not just Plaintiff. Wong Dep. 67:1-7. Col. Naomi Horowitz testified that Col. Klier routinely scrutinized and critiqued the treatment records for all POM dentists. ECF Nos. 75-4 Ex. J, 85-1 Ex. H ("Horowitz Dep.") 78:14-16. Further, Col. Klier testified that he held the meeting on the use of sealants because he was concerned about the number of sealants applied by both Plaintiff *and* Dr. Wong. Klier Dep. at 103:3-104:16. While Plaintiff makes a number of conclusory allegations stating that male dentists were not disciplined, she has not pointed to any evidence to establish the existence of a disputed fact. *See, e.g.*, Nguyen Decl. ¶ 16-17. A non-moving party's "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). In sum,

---

[9] The failure to hire Plaintiff for the newly created GS positions is discussed separately below.

25

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

United States District Court

Plaintiff has failed to demonstrate a *prima facie* case for discrimination during her employment at POM. Thus, the Court GRANTS Defendant summary judgment as to any claim that Defendant discriminated against Plaintiff *during* her employment.

*c. Discrimination in Application for Employment Claim*

Plaintiff argues that the failure to hire her for the converted GS position constitutes discrimination in application for employment. ECF No. 1 ¶¶ 34-37; Opp'n at 23:14-24:7. In an application for employment case, the factors required to demonstrate a presumption of discrimination are roughly similar to those applied in the employment context discussed above. A plaintiff alleging discrimination in application for employment must show (1) that she belongs to a protected class; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) that, after her rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas Corp.*, 411 U.S. at 802. The Court finds that Plaintiff has shown a genuine issue of material fact as to whether there is a presumption of discrimination in application for employment sufficient to establish her *prima facie* case, as explained below.

Defendant argues Plaintiff cannot make a *prima facie* showing because "[Plaintiff] did not apply for a position." Mot. at 15:4. However, courts have recognized that failure to apply "may not vitiate a Title VII action." *Yartzoff v. Thomas*, 809 F.2d 1371, 1374 (9th Cir. 1987). A claimant who can accomplish the "difficult task" of showing that she would have applied for a position but for the defendant's discriminatory conduct is "in a position analogous to that of an applicant," and entitled to the same relief. *International Bhd. of Teamsters v. United* States, 431 U.S. 324, 367-68 (1977). In *Teamsters*, the Court observed that if "an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs." *Id.* at 365. The Court observed that an employer might express the same message in more subtle ways, including "the manner in which he publicizes vacancies, his recruitment techniques, [and] his

26

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

responses to casual or tentative inquiries." *Id.; see also Reed v. Lockheed Aircraft Corp.*, 613 F.2d 757, 761 (9th Cir. 1980) (holding that plaintiff who did not apply for a promotion could establish *prima facie* case for discrimination where her employer's policy meant that an employee "had to be sought out" for promotion).

In order to establish a *prima facie* case for discrimination, Plaintiff must demonstrate both (1) that similarly situated individuals outside Plaintiff's protected class were provided information about the insourcing denied to Plaintiff; and (2) that Plaintiff would have applied if she had been provided that same information. Plaintiff has met her burden of showing a genuine issue of material fact on these two prongs, as explained below.

Plaintiff alleges that both Dr. Catterlin and Dr. Wong, both of the male gender, were provided additional information about the insourcing process. Opp'n at 17:19-18:21. Plaintiff points to testimony in which Dr. Catterlin states that in February he "got an email from Colonel Klier saying that the Army was considering converting some contract positions into civil service positions. [Col. Klier] did not know when and he did not know where." Catterlin Dep. 196:9-14. This information was essentially identical to the information provided to the Plaintiff in March. Ex. 23 ("there is a possibility that the DENCOM may open some new [GS positions] at various Army installation dental clinics around the world. . . . This is a generalized worldwide announcement, not specific to [POM]"). Thus, Dr. Catterlin did not receive disparate treatment as a result of the email sent to him in February. Moreover, because Dr. Catterlin was not a POM CSP, Dr. Catterlin may not have been "similarly situated" to Plaintiff with respect to POM's limitations on providing information to CSPs at POM about the insourcing. In other words, Dr. Catterlin could be approached because he was not a contract employee at POM. *See* Klier Dep. 212:10-16 ("According to the initial guidance there, that someone that was not currently a CSP or a current GS employee, you could recruit them. Somebody that was a CSP, you could not recruit them.").

The remainder of Plaintiff's allegations of inside information provided to Dr. Catterlin are spurious at best. Plaintiff's opposition points (without citation) to a January 2010 incident in which Dr. Catterlin allegedly "acted very strangely." Plaintiff argues that Dr. Catterlin's "looking

27

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

embarrassed" in front of Plaintiff demonstrates Col. Klier and Dr. Catterlin "were in direct communication at the time." Opp'n 17:20-26. The Court has been unable to locate testimony regarding this incident in the record. Dr. Catterlin testified that he was not in the clinic at any time in January, Catterlin Dep. 196:16-19, and there is no evidence that Col. Klier was even aware of the insourcing plans until February of that year. Klier Dep. 163:15-18; Ex. 120 (February email announcing insourcing to Col. Klier and other commanders). In any event, even under the extremely deferential standard of evidence at the summary judgment stage, vague allegations of strange behavior do not raise even a colorable inference of inside information.

Although Plaintiff's argument with respect to Dr. Catterlin fails, Plaintiff also alleges that the other POM CSP, Dr. Wong, was provided information which was otherwise denied to Plaintiff. On March 4, 2010, two days after the initial March 2 meeting with all of the CSPs, including Plaintiff, Dr. Wong sent an email to Col. Klier about the insourcing process:

> On the hiring announcement, at the bottom it recommends to also provide a copy of an applicant's resume to the DENTAC HQ's attention: (blank). Could you find out (or give me a name to call) who the POC is at HQ's that would be receiving these copies and how they want to receive them (mail, fax, email?)

ECF 75-5 at 62 ("Ex. 123"). Plaintiff argues the mere fact that Dr. Wong sent an email to Col. Klier demonstrates Dr. Wong had received "special information [that there were openings at POM]." Opp'n at 18:13. However, the text of Dr. Wong's email demonstrates only that he had read the announcement posted by Col. Klier and emailed out to all the CSPs on March 3, including Plaintiff. Plaintiff points to no other evidence which indicates Dr. Wong received communications from Col. Klier prior to sending the March 4 email. *Cf.* Wong Dep. 82:12-24 (stating that Dr. Wong did not receive any additional information from Col. Klier). Later on March 4, Col. Klier responded:

> As I mentioned, that announcement was a "generic" one, so it reads "DENTAC," but in this case, the copies would go to me. The copies are not a requirement; applicant resumes are posted online, and I have access to the online resume database, but the copies are suggested just to let CDRs know that individuals have submitted an application.

United States District Court

Ex. 123. Col. Klier's response ("in this case, the copies would go to me") could be read as improperly giving Dr. Wong insider information by essentially confirming to Dr. Wong that there are in fact openings at POM, because Col. Klier would only receive resumes for applicants *to POM*. Dr. Wong testified that he did *not* understand Col. Klier's email in this way. Wong Dep. 94:2-7 (interpreting the email only to mean that "*should* there be positions at The Presidio, [Col. Klier] would have access to the applications or resumes of those applicants." (emphasis added)). However, because of the ambiguous language used in Col. Klier's email response to Dr. Wong, a reasonable factfinder could conclude that Col. Klier's response implicitly confirmed that there are GS positions at POM, thus unfairly providing information to Dr. Wong that was unavailable to Plaintiff.

This suffices to establish that a similarly situated *male* CSP received information about the insourcing process that was unavailable to Plaintiff. While it is unclear whether having this information would have spurred Plaintiff to apply for the position, summary judgment requires that all evidence be considered in favor of the nonmoving party, Plaintiff. In August, when Plaintiff discovered that her job would be eliminated as a result of insourcing, Plaintiff immediately emailed Col. Klier about applying for a position. Ex. 25. A reasonable fact-finder could thus conclude that had Plaintiff been provided the extra information provided to Dr. Wong in the March 4 email, she would have applied for the position. Thus, on the basis of Defendant's provision of additional information to similarly situated potential applicants and the subsequent failure by Defendant to hire Plaintiff, Plaintiff has shown a genuine issue of material fact as to whether there is a presumption of discrimination in application for employment sufficient to establish her *prima facie* case.

*2. Proffered non-discriminatory explanation and evidence of pretext*

Once a plaintiff establishes a prima facie case of discrimination, as here, the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment decision. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). "This burden is one of production, not persuasion." *Id.* Here, Plaintiff's *prima facie* case for discrimination in

29

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

application for employment is based on the allegedly discriminatory manner in which Defendant recruited CSPs for the converted GS positions at POM. Specifically, Plaintiff relies on the additional information provided to Dr. Wong in the March 4 email.

Defendant's non-discriminatory explanation for sending this email is that Col. Klier provided additional information to Dr. Wong only because Dr. Wong took the affirmative step of *asking* Col. Klier a specific question. Mot. 18:15-17. The record supports this rationale. Col. Klier testified that he told employees during the March 2, 2010 meeting that if they had any "general" questions they could come to him. Klier Dep. at 194:9-14. Dr. Wong followed up by asking Col. Klier a question, to which Col. Klier then responded. Thus, it appears that Col. Klier provided extra information to Dr. Wong only because Dr. Wong asked. Col. Klier did not affirmatively solicit Dr. Wong for a position but simply responded to Dr. Wong's question. There is no evidence that Col. Klier would not have responded to Plaintiff had she submitted a question. In fact, Col. Klier testified that the only reason he did not provide the same information to anyone else was because no one else asked him any questions. *See* Klier Dep. 198:6-8 ("Q: Did you tell … anyone the same information you gave out in [the March 4 email]? A: Nobody else asked me."). The Court notes here that apart from Col. Klier's March 4 email to Dr. Wong, Col. Klier provided the same information universally to all employees regardless of their gender on various occasions, notably at the March 2010 meeting, through his emails to all CSP workers at POM, and through the various bulletin board and website announcements. The Court thus concludes that Dr. Wong's own step of asking Col. Klier a question suffices as a legitimate non-discriminatory reason why additional information that was provided to a potential male applicant (Dr. Wong) was not provided to a potential female applicant (the Plaintiff).

Without any showing of discrimination in the recruitment process, Defendant's subsequent failure to hire Plaintiff is justified by Plaintiff's *own* failure to apply. Plaintiff admits that she saw an announcement on a bulletin board inside POM in March 2010 that included the information that anyone interested in any position would need to submit an application by April 16. Nguyen Dep. 157:7-9; Ex. 21; Opp'n at 13. Similarly, the website to which Col. Klier directed all CSPs,

30

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

including Plaintiff, began showing that jobs would be available *at POM* specifically in early April 2010. ECF 75-4 at 93. Plaintiff admits she stopped checking the website in early March. Nguyen Decl. ¶ 40. Under these circumstances, Plaintiff's failure to apply can be explained only by her own lack of diligence. In sum, the Court finds that Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for providing information about the insourcing in the manner that it did, and for its subsequent refusal to hire Plaintiff for the converted GS position.[10]

Accordingly, the burden shifts to Plaintiff to adduce evidence that Defendant's justifications for its adverse employment actions against Plaintiff were merely a pretext for discrimination. *See Hawn*, 615 F.3d at 1155. Generally, a plaintiff demonstrates pretext "either directly by persuading the [fact-finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (2009). When the evidence of discrimination is direct, a plaintiff need present "very little evidence to survive summary judgment in a discrimination case." *EEOC v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (*quoting Lam v. Univ. of Hawaii*, 40 F.3d 1551, 1564 (9th Cir. 1994)). "But when the plaintiff relies on circumstantial evidence, that evidence must be specific and substantial to defeat the

---

[10] Furthermore, the Court notes that even assuming Plaintiff had applied for the position, Defendant provides the non-discriminatory reason that it would not have hired Plaintiff because she was less qualified than Dr. Catterlin and Dr. Wong. Mot. at 20. Unlike Dr. Catterlin and Dr. Wong, Plaintiff pursued no post-graduate dental education. Nguyen Dep. at 24:17-26:17. She also had no board certifications. *Id.* Plaintiff also asked the Army to remove her credentials for performing pulpectomies because she did not "feel comfortable when [she] was doing it because [she had] not done it for the last 15 years." *Id.* at 194:23-195:2; Ex. 75-5 at 49. Pulpectomies are procedures "every general dentist needs to know how to do." Klier Dep. at 170:6-8. It is the process of starting a root canal. *Id.* In contrast, Dr. Catterlin and Dr. Wong had significant experience working in the Army as dentists. Catterlin Dep. 32:18-35:24; Wong Dep. 13:1-14:7. Defendant further argues that Plaintiff went through four or five dental assistants during her two years at POM, and that typically dental assistants remain with their assigned dentist for the dentist's entire tenure. Catterlin Dep. 66:2-19, 134:15-136:11; Klier Dep. 164:4-165:22. Mot. at 20. The Ninth Circuit has recognized an individual's inability to get along with coworkers and supervisors as a nondiscriminatory reason not to hire the individual. *Galicia v. Postmaster Gen.*, 996 F.2d 1224 (9th Cir. 1993) (unpublished) ("The Postmaster identified a number of legitimate nondiscriminatory reasons for firing Galicia, including that she was unable to get along with her supervisors and co-employees").



United States District Court

employer's motion for summary judgment." *Boeing*, 577 F.3d at 1049 (*quoting Coghlan v. Am. Seafoods Co. LLC,* 413 F.3d 1090, 1095 (9th Cir. 2005)). As discussed above, Plaintiff's evidence of discrimination is circumstantial and based solely on the application of the *McDonnell Douglas* factors, and thus requires "specific and substantial" evidence of pretext. An employee "cannot simply show the employer's decision was wrong, mistaken or unwise" in order to establish pretext. *Dep't of Fair Employment & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 746 (9th Cir. 2011) (internal quotation marks and citation omitted). Instead, "the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence." *Id.* Here, Plaintiff fails to meet her burden.

Plaintiff argues that Defendant's proffered explanations for actions taken during the insourcing process are "conflicting and inconsistent." Opp'n at 26:19-20. Specifically, as evidence that Defendant has given conflicting explanations, Plaintiff points to "obstruction and misinformation concerning whether positions were open at POM coupled with the evidence of special information given to Wong." Opp'n at 26:20-22. However, there is no evidence that Defendant "obstructed" Plaintiff and other CSPs from being hired as GS employees. Plaintiff admits that she saw the first generic announcement posted on the bulletin board in March, which explicitly stated that she had to apply for any position by April 16. Opp'n at 13. While Plaintiff did not notice the revised announcement, uncontradicted evidence indicates that Defendant posted a revised announcement prior to the April 16 deadline, explicitly stating that positions would be available at POM. *See* Nguyen Dep. 157:21-25; Klier Dep. 201:2-9; Ex. 22. Plaintiff states that after the March meeting, she "believed that, if it became likely that [the hiring initiative] would affect POM, there would be an announcement." Nguyen Decl. ¶ 42. This mistaken belief does not suffice to create an affirmative duty on the part of the Defendant. In any event, the initial "generic" job opening announcement was posted on a public-facing website, and between 20-30 people (many of whom did not even work at POM) submitted applications for the dentist positions. Klier Decl. ¶ 7. Indeed, other POM female CSPs were able to submit applications for non-dentist GS

Case No.: 13-Cv-01847-LHK
 ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S
PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

United States District Court

positions based on information identical to that provided to Plaintiff. *See* ECF Nos. 75-4 at 74-76 (transcript of administrative fact-finding conference, hereafter "FFC," testimony of Heather Mooneyham), 85-87 (FFC testimony of Leticia Tijerina), and 90-91 (FFC testimony of Gloira Wyatt).

Furthermore, the Court finds no "contradiction" between Defendant's general reticence to discuss the availability of job openings at POM and Col. Klier's willingness to provide "special" information to Dr. Wong, who took the affirmative step of asking Col. Klier a question. Defendant's primary purpose in limiting the information provided to CSPs was avoiding the appearance of affirmatively "poaching" contract employees from companies like CCI. Heath Dep. 201:4-18. Col. Klier's responsive email to Dr. Wong cannot be characterized as "poaching" Dr. Wong from CCI or affirmatively soliciting him for a GS position because Dr. Wong initiated the contact by emailing a question to Col. Klier, who responded to the question. Dr. Wong's email to Col. Klier made clear that Dr. Wong was *already* intending on applying for a GS position, and Col. Klier's email response was just that – a *response* to Dr. Wong's question. In direct contrast, Plaintiff might have been able to demonstrate pretext if she produced evidence that Col. Klier had deliberately solicited male candidates with additional information, or refused to answer questions – similar to Dr. Wong's questions – from female candidates. *Cf. Reed*, 613 F.2d at 761-62 (finding that employee bringing discrimination claim had demonstrated a triable issue of fact where defendant's system of approaching only male candidates for development programs and promotion gave women no notice of opportunities for promotion). However, Col. Klier treated all of the CSPs at POM the same, with the sole exception of providing some additional information to the only CSP, Dr. Wong, who asked a direct question about the process. There is no evidence that Col. Klier singled out Plaintiff or women for adverse treatment in the application process, or that Defendant's actions were merely a pretext for discrimination. Thus, the Court finds that Plaintiff has failed to show a genuine issue of material fact as to pretext by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons." *Lucent*, 642 F.3d at 746.

33

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

In sum, because Plaintiff has failed to show a genuine dispute of material fact with respect to her Title VII claim of discrimination in application for employment, Defendant's motion for summary judgment with respect to that claim is GRANTED.

**B. Title VII Retaliation Claim**

Title VII prohibits retaliation against an employee for opposing any unlawful employment practice under Title VII. 42 U.S.C. § 2000e–3(a); *Nilsson v. City of Mesa,* 503 F.3d 947, 953 (9th Cir. 2007). While *McDonnell Douglas* dealt specifically with an unlawful discrimination claim, retaliation claims follow the same burden-shifting framework. *See Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). To establish a *prima facie* case, Plaintiff must show (1) that she "engaged in a protected activity"; (2) that she "was subsequently subjected to an adverse employment action"; and (3) "that a causal link exists between the two." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). The analysis is the same in the failure to hire context involving a claim of retaliation, except that the "adverse employment action" is the refusal to hire Plaintiff. *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986) (holding that "plaintiff meets her prima facie burden by showing that 1) she engaged in protected activities, 2) the position was eliminated as to her, and 3) the position was eliminated as to her because of the protected activities."). To demonstrate participation in a protected activity, a plaintiff must show that she had a reasonable belief that the employment practice she protested was prohibited under Title VII. *See Trent v. Valley Electric Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). While Plaintiff need not demonstrate that the behavior complained of was *in fact* unlawful, "[t]he employee's statement cannot be 'opposed to an unlawful employment practice' unless it refers to *some* practice by the employer that is allegedly unlawful." *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983) (emphasis in original) (citation omitted).

Here, Plaintiff cannot establish a *prima facie* case of retaliation because she has failed to establish any genuine issue of material fact concerning whether she engaged in a *protected activity* that led to retaliation. Plaintiff's complaint to the EEOC in September 2010 was protected activity because it clearly alleged discrimination. *See* ECF No. 88-4 at 3 (Plaintiff's EEOC complaint

34

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

United States District Court

alleging discrimination on the basis of "sex" and "national origin"). However, at that point, all of the alleged adverse employment actions had already been taken. A retaliation claim requires that Plaintiff engaged in protected activity and that she was "subsequently" subjected to an adverse employment action. *Dawson*, 630 F.3d at 936. Plaintiff has not demonstrated that she engaged in protected activity *prior to* her EEOC complaint. While Plaintiff complained to Col. Klier at various times in 2009 or early 2010, none of those complaints referenced or even pointed to discrimination on the basis of race, gender, or national origin. *See, e.g.*, ECF 85-2 at 80 ("Ex. 111") (July 2009 letter to Col. Klier, no mention of race, gender, or national origin); ECF 85-2 at 77-78 ("Ex. 114") (May 2009 letter to Col. Klier, no mention of race, gender, or national origin). Indeed, many of Plaintiff's complaints were couched specifically as objections to the allegedly preferential treatment afforded to military personnel over contract employees. *See, e.g.*, ECF 88-6 at 61 ("Ex. 187") (December 2009 letter to CCI, alleging a "distinct feeling of partiality for the military personnel and a condescending and sometime hostile treatment toward the civilian personnel."). Couching these complaints in the language of race and gender after the fact does not retroactively support a claim of protected activity. *See Jurado v. Eleven-Fifty Corp.*, 813 F.2d 1406, 1411 (9th Cir. 1987) ("[Plaintiff] has not shown that he ever opposed the format change as discriminatory before he was fired. He merely opposed the change for personal reasons …"); *Lee v. Potter*, 2008 WL 4449568, at *7 (N.D. Cal. Oct. 1, 2008) (finding that plaintiff did not have reasonable belief her protest was protected activity because plaintiff's complaints pertained to allegedly unfair but not discriminatory employment practices), *aff'd*, 358 Fed. Appx. 966 (9th Cir. 2009).

The only action that Plaintiff took which could possibly constitute protected activity is Plaintiff's December 2009 interaction with the Army's EEO office. In response to the December 8 meeting incident, Plaintiff telephoned the Army EEO office responsible for POM. Nguyen Decl. ¶ 30. Because Plaintiff was a CSP, the EEO office told Plaintiff to contact CCI with her complaints instead, which she did. *Id.* Plaintiff points to no evidence demonstrating that the call to the EEO office concerned activity protected by Title VII. Indeed, when she did contact CCI the next day, her complaint concerned only discrimination against civilian employees as opposed to

United States District Court

military. *See* Ex. 187. The mere fact that the EEO office was contacted does not, by itself, demonstrate that Plaintiff engaged in protected activity, as the record demonstrates that the EEO office provides support for a wide variety of workplace complaints "whether it's alleged discrimination or not." ECF Nos. 75-4 Ex. H, 85-1 Ex. D ("Donahue Dep.") 88:6-23. Protected activity must at least "[refer] to some practice by the employer that is allegedly unlawful." *Crown Zellerbach Corp.*, 720 F.2d at 1013. Merely calling the EEO office and being told to contact a different entity, without more, does not constitute "protected activity" under Title VII.

Finally, as Plaintiff argues, Col. Klier admitted "he did not like Plaintiff because of her complaints." Opp'n at 21:28-22:1. Specifically, Col. Klier testified:

> Q: Did you like [Plaintiff]?
>
> A: Not particularly. I certainly didn't have anything – dislike for her for some time when I first got there. As I said, she caused so many problems around that clinic and was complaining so much. Every time you turned around, she was complaining to somebody, so it becomes difficult to like somebody like that."

Klier Dep. 172:4-10. Because of Col. Klier's reference to "complaints," the Court notes that these statements might be construed as direct evidence that Plaintiff's "complaints" caused Col. Klier to retaliate against the Plaintiff in some way. However, this argument fails. As discussed above, Plaintiff has not shown that any of the "complaints" she filed with Col. Klier or others referred to race, gender, or national origin and thus do not constitute activity protected by Title VII. As a result, Col. Klier's dislike of Plaintiff's (unprotected) workplace complaints does not constitute evidence that Col. Klier retaliated against Plaintiff for "oppos[ing] any practice made an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a); *see Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) (finding that complaints about employer on grounds other than those protected by Title VII could not form the basis of retaliation claims). Beyond that, any evidence that Col. Klier disliked the Plaintiff personally is not evidence that he retaliated against her on the basis of race, gender, or national origin. *See Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 472 (8th Cir. 1995) ("Statements implying a personal dislike or distrust of [plaintiff] are not the same as statements found to imply discriminatory attitudes toward women as a group.").

United States District Court

In sum, Plaintiff has not demonstrated a *prima facie* case for retaliation because she cannot point to evidence demonstrating that she engaged in protected activity. Thus, because Plaintiff has failed to show a genuine dispute of material fact with respect to her Title VII retaliation claim, the Court GRANTS summary judgment to Defendant with respect to Plaintiff's retaliation claim.[11]

**C. Title VII Harassment Claim**

To establish a *prima facie* case for her hostile work environment claim under Title VII, Plaintiff must raise a genuine dispute of fact as to whether (1) she was "subjected to verbal or physical conduct" because of her race, gender, or national origin; (2) "the conduct was unwelcome"; and (3) "the conduct was sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive work environment." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003). In determining whether a plaintiff's allegations make out a colorable claim of hostile work environment, courts apply a totality of the circumstances test, looking at factors like frequency, severity, and level of interference with work performance. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations and quotation marks omitted). Conduct is considered from the perspective of the "reasonable victim." *Brooks*, 229 F.3d at 924.

---

[11] Plaintiff argues that she "need not show that discrimination or retaliation was the only reason that Klier and the others acted as they did." Opp'n at 22. Notwithstanding this, Plaintiff's discrimination and retaliation claims still fail because Plaintiff has failed to show a genuine issue of material fact regarding whether discrimination or retaliation were factors *at all* in motivating Defendant's actions in this case. "Plaintiff is only entitled to a trial on [her] Title VII claim if the record reveals a 'triable issue as to whether the adverse employment action was influenced by improper motives.'" *Salazar v. Locke*, 2012 WL 843946, at *13 (E.D. Cal. Mar. 12, 2012) (quoting *Dominguez–Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005)) (rejecting plaintiff's mixed motive argument as irrelevant because plaintiff had failed to show "either direct evidence or specific and substantial circumstantial evidence of retaliation at the summary judgment stage.").

37

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

Here, Plaintiff has not alleged the kind of severe and pervasive conditions that are sufficient to alter the conditions of her employment. The only concrete example of harassment based on Plaintiff's gender[12] is the incident where Maj. Wayt allegedly told Plaintiff she "must be very tough on men" because she was a "single woman" and lived "alone in a big house in Pebble Beach with two dogs." Nguyen Dep. 114:16-25. Despite the unfortunate nature of this comment, standing alone it is insufficient to demonstrate a hostile work environment. *See Brooks*, 229 F.3d at 924 ("[A]n isolated incident of harassment by a co-worker will rarely (if ever) give[s] rise to a reasonable fear that sexual harassment has become a permanent feature of the employment relationship").

Maj. Wayt's remarks carry even less weight because the incident was not reported to any of Maj. Wayt or Plaintiff's supervisors, which the Plaintiff does not dispute. Nguyen Dep. 115:10-12. "Only the employer can change the terms and conditions of employment," and therefore Plaintiff must show that "she reasonably feared she would be subject to such misconduct in the future because the [employer] encouraged or tolerated [a co-worker's] harassment." *Brooks*, 229 F.3d at 921. In *Brooks*, a coworker actually assaulted the plaintiff, fondling her underneath her clothes against her will. *Id.* The Ninth Circuit nonetheless found that there was no hostile work environment because the employer investigated the complaint immediately and terminated the harassing coworker, and therefore could not be said to have "ratified" or "encouraged" his behavior. *Id.* Here, while POM did not discipline Maj. Wayt, Plaintiff has not demonstrated that POM ratified or encouraged behavior of which POM was unaware.

The remainder of Plaintiff's hostile work environment allegations fail both because they are insufficiently serious to change the conditions of her employment and because Plaintiff has not demonstrated that any of the actions were taken "because" of her gender. *See Manatt*, 339 F.3d at 798. Plaintiff points to the variety of the workplace complaints discussed in detail above, including

[12] While Plaintiff's Complaint alleges harassment on the basis of race, gender, and national origin, Plaintiff's opposition only references gender. ECF No. 1 at 11.

38

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

her assignment to the Accelerated Program, the MFR for the December 8 meeting, the "sealant" incident," and Col. Klier's allegedly hostile attitude towards the Plaintiff. Opp'n at 29:1-9. These complaints do not establish the presence of a hostile work environment. Title VII is not a "general civility code." *Farragher*, 524 U.S. at 778. The incidents to which Plaintiff points are insufficiently "severe" and "pervasive" to change the conditions of Plaintiff's employment, and there is no evidence that the actions to which Plaintiff points were the result of discrimination based on status protected by Title VII. Because Plaintiff does not allege facts sufficient to support a claim for hostile work environment under Title VII, her harassment claim fails, and Defendant's motion for summary judgment on that claim is GRANTED.

**D. Civil Rights Act and Constitutional Claims**

*1. Civil Rights Act, 42 U.S.C. § 1981*

Plaintiff alleges that Defendant violated her rights under 42 U.S.C. § 1981 by "refusing to consider [Plaintiff's] employment application, preventing her from having the opportunity to apply for the GS positions, [and] terminating her employment" as a result of her race. ECF No. 1 ¶ 48. According to the doctrine of sovereign immunity, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Thus, "[a] court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (citation omitted). Though sovereign immunity is only waived where consent to suit is "unequivocally expressed," *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981), "once Congress has waived sovereign immunity over certain subject matter, the Court should be careful not to assume the authority to narrow the waiver that Congress intended," *Ardestani v. I.N.S.*, 502 U.S. 129, 137 (1991) (internal quotation marks omitted). Here, Defendant does not raise sovereign immunity as a defense, but sovereign immunity can be raised at any time during judicial proceedings or by the court *sua sponte*. *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 725 (9th Cir. 2008).

39

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

This Court has previously held that sovereign immunity bars § 1981 claims against both the United States and Executive branch officials acting in their official capacities. *See Ardalan v. McHugh*, 2013 WL 6212710, at *12 (N.D. Cal. Nov. 27, 2013). Here, given that the United States has not consented to be sued and because Plaintiff sues Defendant John McHugh only in his official capacity, ECF No. 1 at 1 (suing Defendant for actions made "under the color of law"), the Court holds that Plaintiff's § 1981 claim is barred by the doctrine of sovereign immunity, and Defendant's motion for summary judgment with respect to that claim is GRANTED for lack of jurisdiction.

*2. Due Process Claims*

Defendant moves for summary judgment on Plaintiff's claim alleging a violation of the Fifth Amendment's guarantee of Due Process. Mot. at 24:22-25:1-4. The Court GRANTS Defendant's motion.

The Court notes, as a preliminary matter, that Defendant's first argument that Plaintiff's claim is barred by Title VII fails. Generally, Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976). However, "[r]emedy for unconstitutional actions other than employment discrimination, even if arising from the same core of facts, is not barred by Title VII." *Arnold v. United States*, 816 F.2d 1306, 1311 (9th Cir. 1987). Though it relies on the same facts as Plaintiff's Title VII claim, Plaintiff's Due Process claim does not allege discrimination *per se*. Rather, Plaintiff asserts that she had a "property right in her job at POM" and claims that the Defendant's actions deprived her of that right in violation of Due Process. ECF No. 1 ¶¶ 51-52. Specifically, Plaintiff points to "Defendant's failure to follow applicable statutes, regulations, policies and procedures in making the announcements concerning the change of her position to a GS position and Defendant's actions in depriving her of needed information, misleading her, and blocking her from applying for that position." *Id.* ¶ 52.

Nevertheless, the Court agrees with Defendant that Plaintiff's claim fails on the merits because Plaintiff cannot show that she has a property interest in her job at POM. To assert a

United States District Court

procedural Due Process claim under the Fifth Amendment, Plaintiff must "first establish a constitutionally protected interest. [Plaintiff] must have more than a unilateral expectation of it; instead, she must have a legitimate claim of entitlement." *Stanley v. Gonzales*, 476 F.3d 653, 660 (9th Cir. 2007) (internal citation omitted). Property interests are not created by the Constitution. *Bollow v. Fed. Reserve Bank of San Francisco*, 650 F.2d 1093, 1098 (9th Cir. 1981). Rather, "[s]uch entitlements are created by 'rules or understandings' that stem from an independent source, such as relevant statutes, regulations, and ordinances, or express or implied contracts." *Id.* (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

Here, Plaintiff's contract with CCI makes clear that she may be terminated "at any time with or without cause." ECF 75-5 at 42 ("Ex. 31"). Plaintiff was essentially an at-will employee of CCI, and therefore does not have a constitutionally protected property interest in her employment. *See Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *Curtis v. City of Redmond*, 303 Fed. Appx. 560, 561-62 (9th Cir. 2008) (unpublished) ("At-will employees have no property interest in their employment."). Furthermore, the contract between CCI and the government specified that "[t]he Government reserves the right to terminate this contract, or any part hereof, for its sole convenience." Ex. 261 at 362. Plaintiff argues that she is not bound by the contract between CCI and the government because she was not a party to it, but Plaintiff's own contract with CCI makes clear that her employment may be terminated "if [CCI] and [the government] do not conclude or renew their agreement for any reason, justified or not[.]" Ex. 31. Generally, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). Plaintiff's contract makes clear that her employment at POM was entirely contingent on the contract between CCI and the government, and that her employment could be terminated if the government chose not to renew the contract with CCI, whether "justified or not." Thus, after the termination of the contract between CCI and POM, plaintiff had no constitutionally protected property interest in her continued employment. *See Schraeger v. City of San Francisco*, 8 F.3d 29 (9th Cir. 1993) (holding that appellants who were employed by a company under contract with the city had no entitlement

United States District Court

to continued employment after the termination of contract between their employer and the city). In sum, Plaintiff has not shown that she had a Due Process right to challenge the process by which she was terminated because Plaintiff cannot show that she had a property interest in her job at POM.

Plaintiff also makes cursory allegations that Defendant failed to "follow applicable statutes, regulations, policies and procedures in making the announcements concerning the change of her position to a GS position," but fails to actually cite any specific statutes or regulations that were not followed in the announcement of the contract change.[13] ECF No. 1 at 13:24-28; Opp'n at 36:24-37:17. Because Plaintiff fails to specify which specific statutes or regulations Defendant is alleged to have violated, the Court declines to "scour" the U.S. Code and Federal Register for potential issues of triable fact. *Keenan*, 91 F.3d at 1279. Defendant's motion for summary judgment with respect to Plaintiff's Due Process claim is GRANTED.

## V. CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Defendant's motion for summary judgment is GRANTED as to all of Plaintiff's claims.

2. Plaintiff's motion for partial summary judgment is DENIED as moot.

3. Defendant's motion to strike Plaintiff's "Errata" is GRANTED.

4. Plaintiff's motion for extension for time to file the Calderon Declaration is DENIED.

The Clerk shall enter judgment in favor of Defendant per this Order and close the file.

[13] The only allegation which Plaintiff makes with any specificity is a charge of nepotism based on the familial relationship between Dr. Andre Wong and Major General Wong, the Commander of DENCOM at the time that Dr. Wong was selected for the position at POM. Opp'n at 37:3. Defendant concedes there was a familial relationship between Dr. Andre Wong and Major General Wong. Reply at 5. Though Plaintiff does not cite to any particular statute barring nepotism, 5 U.S.C. § 3110 provides that "[a]n individual may not be appointed… to a civilian position in an agency if such appointment… has been advocated by a public official, serving in or exercising jurisdiction or control over the agency, who is a relative of the individual." 5 U.S.C. § 3110. However, "there is no private cause of action under section 3110." *Limongelli v. Postmaster Gen. of U.S.*, 707 F.2d 368, 372 (9th Cir. 1983). In any event, Plaintiff has not provided any testimony from *any* witness or any document as evidence that nepotism played a role in the decision to hire Dr. Wong or the decision not to hire Plaintiff. There is no evidence that Major General Wong influenced the decision to hire Dr. Wong or ever contacted directly or indirectly the personnel responsible for insourcing at POM.

42

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT

United States District Court

**IT IS SO ORDERED.**

Dated: August 22, 2014

LUCY H. KOH
United States District Judge

43

Case No.: 13-Cv-01847-LHK
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT